## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**LEISHA A. GOODWIN,**

     **Plaintiff,**

**vs.**                            **Case No.  5:16cv261-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,**[1]

     **Defendant.**

                               **/**

## <u>MEMORANDUM OPINION AND ORDER</u>

     This is a Social Security case referred to the undersigned upon

consent of the parties, ECF No. 9, and reference by District Judge Mark E.

Walker.  ECF No. 10.  The decision of the Acting Commissioner is affirmed.

## I.  Procedural History

     On August 2, 2012, Plaintiff, Leisha A. Goodwin, filed an application

for a period of disability and disability income benefits (DIB) and alleged

disability beginning May 26, 2011, based on four bulging discs in her back,

two bone spurs and pinched nerve in her left side, and a learning disability.

Tr. 13, 158-59, 216.  (Citations to the record (transcript/administrative

---

[1]  On January 23, 2017, Nancy A. Berryhill, became the Acting Commissioner of Social Security.

record), ECF No. 15, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)

The application was initially denied on August 5, 2012, and upon reconsideration on March 8, 2013. Tr. 13, 91-95, 104-08. On March 26, 2013, Plaintiff requested a hearing. Tr. 13, 109-10. On August 12, 2014, Administrative Law Judge (ALJ) Claire R. Strong, held a video hearing in Tallahassee, Florida, and Plaintiff appeared in Panama City, Florida. Tr. 13, 37-38. Plaintiff testified. Tr. 41-60. Vicky H. Pratton, an impartial vocational expert, testified. Tr. 13, 57-61, 150-51 (Resume). Michael R. Reiter, an attorney, represented Plaintiff at the hearing. Tr. 13, 35-37, 39, 119-20.

During the hearing, the ALJ stated that the only assessments that were completed were from March 7, 2013, Exhibit 5A, Tr. 76-89, and a consultative examination of October 8, 2012, Exhibit 7F, Tr. 424-30. Both assessments showed the "individual would be able to do some work." Tr. 56. The latest medical records were from St. Andrews Community Medical. *Id.*; *see* Tr. 485-91 (Exhibit 12F). The ALJ stated that a statement was needed from a doctor regarding "what they believe that she is capable of doing at this time" and the ALJ also needed a post-hearing consultative

examination (CE) or MSS.  Tr. 57.  Counsel advised that he would obtain a

doctor statement from St. Andrew's.  *Id.*

The vocational expert described Plaintiff's past relevant work.

Tr. 54-56.  The ALJ asked the vocational expert a hypothetical question

based on Exhibit 5A.

> Q Ms. Pratt, we have a younger individual at onset who is currently
> closely approaching advanced age, with an eighth grade education.
> Work experience as you've described.  This first hypothetical is based
> on [Exhibit] 5A, Dr. Harris [phonetic] completed this on March the 7th,
> 2013 based on what was in the record at the time.  Okay.  He said
> the individual could occasionally lift and carry up to 50 pounds,
> frequently lift and carry up to 25 pounds, stand and/or walk with
> normal breaks about six hours, sit with normal breaks about six
> hours, push and/or pull unlimited, all posturals were -- there were no
> limitations in posturals.  Environmental limitations, avoid concentrated
> exposure to fumes, odors, dusts, gases, and poorly ventilated areas.
> Could this individual do the claimant's past relevant work?
>
> A Let me check one thing, your honor.
>
> Q Okay.
>
> A Yes, your Honor, for all the jobs except for stock clerk, not per DOT
> but as performed both before and after her injury.

Tr. 57-58; *see infra* at 9, ¶ 6 (Plaintiff's past relevant work).

The ALJ asked the next hypothetical questions and responses

ensued.

> Q Okay. All right.  Next hypothetical is based on 7F, a consultative
> examination completed by Dr. Oakenson [phonetic] on October the
> 8th, 2012.  Okay.  What is --

ALJ: Counselor, what is TOC?

ATTY: I don't know.

ALJ: There was a TOC assessment.  Let's see.

ATTY: That's in 7F?

ALJ: Uh-huh.

ATTY: Okay.

ALJ: Talks about -- there's a note, a TOC note dated January 17th of '12 where a six percent impairment rating was given with continued capability for doing full-time, medium duty work.

ATTY: Okay, that would -- they're referring to Tallahassee Neurological in [Exhibit] 6F.  There was on 6F6, Tallahassee Neurological --  the doctor said that she was welcome to go back to work at a medium duty level.  That maximum medical improvement with a six percent integration.

ALJ: Okay. All right, thank you.  Okay.  So Dr. Oakenson did a full range of motion study and then he said, as a comment in closing, that he would agree with the TOC assessment that she could do at least moderate work.  "She is doing that at home now.  She appears to have no difficulty with sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling.  I don't even see any significant psychological issues here.  There is no physical contra-indication to work here."  So if you would -- you would have to give a functional definition to what he means of moderate work. Moderate work was certainly more than likely be medium work, would you agree, Ms. Pratt –

ATTY: Well --

VE: Yes, your honor.

ALJ: Okay.

### Examination of Vocational Expert by Administrative Law Judge

Q It -- so if we say the -- since he said he agreed with the TOC and the TOC said that she could continue capability for doing full-time medium duty work, that we would -- it would be reasonable to assume that moderate means medium since he said he agreed with the TOC.

A Yes, your honor.

Q So if the individual could do medium work, would that individual be able to do any of the claimant's past relevant work?

A Yes, your honor, all of the past work, with the stock clerk as performed not per DOT. And stock clerk does vary quite a bit from position to position. Many retail stockers report anywhere from light to heavy. It just depends on the setting.

Q Okay. All right. Thank you.

ALJ: All right, counselor, you want to do a hypothetical or you want to wait and see if you can get an MSS or what?

ATTY: Well, I'll go – we'll do a hypothetical.

ALJ: Okay.

### Examination of Vocational Expert by Claimant's Attorney

Q On [Exhibit] 6F12, where it is noted by Tallahassee Neurological that -- they opined that it was reasonable to do work lifting up to 20 pounds, but they also noted that she needed a functional capacity evaluation there. If this person could occasionally lift 20 pounds, frequently only lift 10 pounds, and then could stand or walk for six hours, sit for six hours with no postural limitations, would the person be able to do the past relevant work?

A The part salesperson per DOT but not as performed, the cleaner, housekeeping, companion, deli manager, both DOT and as performed.

Q Okay.

ATTY: That's all I have, your honor, then I would of course ask that we keep the record open to get a physical capacity from St. Andrew's Clinic.

ALJ: Okay.  All right, we'll do that.  Ms. Goodwin, thank you for coming in and good luck to you.  As soon as I get a -- something else that your attorney's going to try to get for me, when I get that I'll be able to make a better decision in your case and it will be mailed to you to your home address with a copy to your attorney.

Tr. 58-61.  The hearing closed.

On February 5, 2015, the ALJ informed Plaintiff's counsel by letter that she had secured additional evidence "proffered to the claimant's representative (Exhibit 17E)," which would be placed in the record: a Consultative Examination with assessment and a Physical Functional Capacity Form dated January 28, 2015, and a Radiology Report (lumbosacral spine) dated January 14, 2015.  Tr. 13, 268-69.  These documents appear in the record at pages 492 through 505 (Exhibits 13F and 14F), Tr. 492-505, and were considered by the ALJ.  Tr. 13, 24-27.  Counsel requested additional time "to secure a medical source statement," but no additional information was received by the ALJ.  Tr. 13.  The ALJ

also noted: "Evidence discussed prior to the claimant's alleged onset date is provided for historical purposes."  Tr. 13.

On March 6, 2015, the ALJ entered her decision and denied Plaintiff's application for DIB concluding that Plaintiff was not disabled from May 26, 2011, through the date of her decision.  Tr. 13-30.

On April 6, 2015, Plaintiff requested review of the ALJ's decision. Tr. 6-9.  On July 22, 2016, the Appeals Council denied Plaintiff's request for review, Tr. 1-5, stating, in part, that it had considered a Radiology Report from Bay Medical Center dated September 2, 2015, consisting of three pages.  Regarding the latter information, the Appeals Council concluded: "This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before March 6, 2015," the date of the ALJ's decision.  Tr. 2.  (This information is not included in the record.  Tr. 15.)  The ALJ's decision stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On September 19, 2016, Plaintiff filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 19 and 20, which have been considered.

## II.  Findings of the ALJ

1. "The claimant meets the insured status requirements [for DIB] of the Social Security Act through December 31, 2017."  Tr. 15.

2. "The claimant has not engaged in substantial gainful activity since May 26, 2011, the alleged onset date."  *Id.*

3. "The claimant has the following severe impairments: osteoarthritis; lumbar spondylosis of L2-L3; lumbar herniated disc; thoracic herniated disc; myofascial pain; and essential tremors."  Tr. 16. The ALJ also considered other impairments of obesity, hypertension, gastroesophageal reflux disease (GERD), migraine headaches, and asthma, and concluded that the medical record did not support any significant functional limitations.  *Id.*  The ALJ also considered Plaintiff's "subjective complaints of breast cancer" and determined that the "longitudinal medical record does not support a finding of a medically determinable impairment."  *Id.*

4. "[T]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 16.

5. "[T]he claimant has the residual functional capacity [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds.  She can stand and/or walk with normal breaks for six hours in an eight-hour workday.  She can sit with normal breaks for six hours in an eight-hour workday. She does not have postural limitations (climbing, balancing, stooping, kneeling, crouching and crawling), and her ability to push and/or pull is unlimited.  She must avoid concentrated exposure to fumes, odors, dust, gas or ventilated areas."[2]  Tr. 17.

---

[2]  "Occasionally" means: "activity or condition exists up to 1/3 of the time." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating.  "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time."  *Id.*  Medium work means, in part, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

6.  The claimant is capable of performing past relevant work as a salesperson, auto parts, with a Specific Vocational Preparation (SVP) level of 5, light, skilled job performed at medium exertional level; stock clerk (actually performed), with an SVP level of 4, heavy, semi-skilled job, performed at the medium and light exertional levels; home attendant, a medium, semi-skilled job, with an SVP of 3; cleaner/housekeeper, a light, unskilled job with an SVP of 2; companion, a light, unskilled job, with an SVP of 2; and deli manager, food services, a light, skilled job, with an SVP of 5. This work does not require the performance of work-related activities precluded by the claimant's RFC.  Tr. 28; *see* Tr. 54-55. The ALJ made alternative findings at step five that are not contested.  Tr. 29-30.

7.  "The claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of [the ALJ's] decision."  Tr. 30.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

---

weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[3]

The burden is on the claimant to prove that she is disabled.  Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987).  "In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age,

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A); <u>Moore v. Barnhart</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of Health & Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If

---

[4] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record resolving conflicts that might appear. 20 C.F.R. § 404.1527.  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole;

(4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 404.1527(b) & (c).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added)."  *Id*.

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).  Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583

(citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

### The ALJ did not err when denying Plaintiff's application for Social Security benefits.

Plaintiff raises three issues for consideration: First, Plaintiff argues the ALJ failed to follow Social Security rules when evaluating Plaintiff's credibility; second, the ALJ failed to follow Social Security rules when evaluating the weight of treating source medical opinions; and third, the ALJ failed to incorporate a proper hypothetical question when the vocational expert was questioned during the hearing.  ECF No. 19 at 9-13.

1.

The second issue will be discussed first.  Plaintiff argues that the ALJ erred when she did not properly credit the opinions of her treating physician

Karin Maddox, M.D., whose opinion was consistent with the medical opinion of James Talkington, M.D., Tr. 19, 281-84, 314-21, *see infra* at 19, who provided a consultative examination assessment regarding Plaintiff's Workers' Compensation claim, and Anthony Posca, M.D.,[5] and when giving greater weight to other opinions that were not supported by the record. ECF No. 20 at 4-6, 11-12.

The ALJ began her discussion of the medical evidence when Plaintiff presented at Bay Medical Center on November 1, 2010, due to back pain. Tr. 18, 271-72.  Plaintiff testified that she sustained a back injury at work. *Id.*  Plaintiff was anxious and had muscle spasms but, otherwise, the physical examination was normal.  She was diagnosed with acute low back pain; her condition improved with conservative treatment.  *Id.*  Plaintiff received follow-up care at Bay Walk-In Clinic on November 2, 2010, complaining of lower back pain and diagnosed with lumbago myofascitis. Tr. 19, 305.

Her muscle strength was five out of five and she had full range of motion, but was prescribed narcotic pain medication.  Plaintiff exhibited symptoms associated with back pain two days later, but her muscle

---

[5] Dr. Posca treated Plaintiff at the Bay Walk-In Clinic.  *See* Tr. 18-19, 285-93, 297-307.

strength and range of motion in all extremities remained the same.  Tr. 19, 297.

On November 4, 2010, Dr. Posca completed a Florida Workers' Compensation Uniform Medical Treatment form and "indicated the claimant's functional limitations and restrictions were of such severity that she cannot perform activities in a sedentary level as of October 23, 2010 (Exhibit 2F/19)."[6]  Tr. 19, 299.  The ALJ noted, however, that "this opinion addresses a period well before the claimant's alleged onset date and the context of this assessment suggests only a temporary restriction pending contemplated medical improvement, and as such, I afford little weight to this opinion."  Tr. 19.

Plaintiff underwent an MRI of the lumbar spine on November 5, 2010, and "the study showed moderate disk degeneration with wide disk protrusion of moderate size that causes some deformity at L2-3, left posterior disk herniation of moderate size at T11-12, moderate disk degeneration at T12-L1, and small posterior disk protrusions at L4-5 and L5-S1.  (Exhibits 2F/14-15; 3F)."  Tr. 19, 294-95, 312-13.

---

[6]  On November 9, 2010, Dr. Posca opined Plaintiff was unable to perform many functional activities, but could return to "light duty only."  Tr. 288.  She had not reached MMI.  *Id.*

Dr. Posca referred Plaintiff to Dr. Talkington "for a consultation regarding her Workman's Compensation claim."  Tr. 19.  The ALJ discussed Dr. Talkington's examination results and findings of November 17, 2010, but determined that his "findings are not consistent with his physical examination.  As previously mentioned, her musculoskeletal examination was unremarkable.  Her gait was normal.  Her straight leg-raising test was normal.  She had 'mild' muscle spasm on both sides.  She was well nourished and in good health."  Tr. 19, 281-84, 319-21.  The ALJ also discussed the results of a follow-up appointment with Dr. Talkington on December 8, 2010, Tr. 317-18, and noted, in part, that "[t]he physical examination was normal.  Her straight leg raise testing was normal.  She had 'mild' muscle spasm on both sides.  The claimant was diagnosed with acute left and acute right low back pain."  Tr. 19, 318; *see* Tr. 315-16 (Apr. 4, 2011, for similar results and related to light-duty with present restrictions; treatment included physical therapy and therapeutic injections/blocks.).  On May 16, 2011, Dr. Talkington noted Plaintiff missed her appointment and no follow-up was necessary.  Tr. 314.

At this point, the ALJ began a lengthy discussion of Plaintiff's

treatment at Brain and Spine Center, LLC (BSC), which began in January

and February 2011.[7]  Tr. 19-20.

> From January 2011 through February 2011, she received treatment
> for myofascial pain, back pain, and muscle spasms at Brain and
> Spine Center, LLC (Exhibit 4F).  She also stated that physical
> therapy did not help and that she was limited to light work. Her blood
> pressure during this time was 121/91 and 118/82.  Although the
> examiner noted that her gait was antalgic, that Romberg was
> negative, and that she had multiple trigger points in the lumbar
> region, the claimant denied numbness, tingling and weakness of the
> legs.  Additionally, her muscle strength was 5 out of 5 in all
> extremities and there was evidence of atrophy.  In these records, she
> was diagnosed with lumbar radiculopathy, thoracic pain, and
> myofascial pain.  In terms of treatment, she was prescribed narcotic
> pain medication and she received therapeutic injections/blocks.
> Although the claimant has received treatment for the allegedly
> disabling impairment(s), that treatment has been essentially routine
> and/or conservative in nature (Exhibit 4F).
> The claimant returned to Dr. Talkington's office on April 4, 2011
> (Exhibit 3F).  The claimant continued to report, "The pain is
> somewhat better since its onset" (Exhibit 3F) [Tr. 315].  She stated
> her treatment included epidural therapeutic injection/blocks.
> Dr. Talkington noted, "In general, the current spine problem is
> basically stable and unchanged since its onset" (Exhibit 3F/8)
> [Tr. 315, 317 (same on Dec. 8, 2010)].  The physical examination
> was normal.  Her straight leg raise testing was normal.  She had

---

[7]  Before referring to this discussion, Plaintiff appears to argue that the ALJ erred in her consideration of "treatment notes and test results" from Dr. Karin Maddox, ECF No. 19 at 4-5, 11-12.  The notes are from Douglas L. Stringer, M.D., of BSC.  *See* Tr. 341-58, 387-97.  Plaintiff was also seen by Merle P. Stringer, M.D., of BSC from January through July 2011.  *See* Tr. 359-84, 398-405.  (Among other statements, on August 1, 2011, Dr. Douglas Stringer released Plaintiff to "return to work at light duty with maximum lifting of 20 lbs."  Tr. 353, 358.)  Dr. Maddox also works at BSC and saw Plaintiff from January and February 2011.  Tr. 323-35.  The ALJ referred to Dr. Maddox's patient notes and the patient notes from Drs. Stringer.  Tr. 19-20 (Exhibits 4F and 5F, respectively).

"mild" muscle spasm on both sides. The claimant was diagnosed with acute left and acute right low back pain [Tr. 316 (Apr. 4, 2011, patient to return in six weeks)].

She underwent an MRI of the thoracic spine on May 10, 2011, which revealed disk degeneration of moderate degree at T11-12 and T12-11, mild facet degeneration at T9-10 and T10-11; and "potentially significant disease in the cervical region, primarily at C5-6 and C6-7 (Exhibit 5F/46-47).

From April 2011 through August 2011, she received treatment at Brain and Spine Center, LLC for myofascial pain, back pain, neck pain, pain in her thoracolumbar area with some numbness involving her feet, difficulty with urinary hesitance and urinary frequency, some numbness involving her leg legs, some difficulty ambulating due to back pain, elevated blood pressure, an muscle spasms (Exhibit 5F). Her treating physicians were Merle Stringer, M.D., and Douglas Stringer, M.D. Drs. Stringer noted that she had a limping gait, decreased upper and lower extremity strength, marked muscle spasm, myofascitis with trigger point tenderness, and straight leg raise testing was positive, but there was no evidence of edema and she had full range of motion of all joints (Exhibit 5F/2-4, 8-9, 15-16, 22-23, 27-28, 34-35, 41-42, 50-51, 55-56, 61). In fact, the claimant routinely denied joint pain, joint swelling, muscle pain, muscle weakness, unsteadiness, neck pain, neck stiffness, headaches, numbness, difficulty breathing on exertion, shortness of breath, gastrointestinal issues, trouble walking or easy fatigability (Exhibit 5F/5, 10, 17-18, 29, 36-38, 43-45, 52, 57, 62). In these records, she was diagnosed with mid to lower thoracic pain; lumbar disc disease; low back pain; bilateral leg pain (but no evidence of nerve root compression); bulging disc at T11-T12 and T12-L1 without significant cord compression; bulging disc of L1 to S1, without significant nerve root compression or spinal stenosis; S1 joint tenderness; and L3-L4, L4-L5, L5-S1 bilateral lumbar facet irritation. In terms of treatment, she was prescribed narcotic pain medication because physical therapy did not relieve her pain. Although the claimant has received treatment for the allegedly disabling impairment(s), the previously discussed

records show that treatment has been essentially routine and/or conservative in nature (Exhibit 5F).

Tr. 19-20.

Plaintiff's argument that Dr. Douglas Stringer's notes should have been given controlling weight is rejected.  ECF No. 19 at 11-12 (referring to Dr. Maddox).  The notes cited by Plaintiff include her subjective statements to her physicians and a few clinical findings and diagnoses.  ECF No. 19 at 4-6; Tr. 341-43, 347, 351.[8]

Assuming for the sake of argument that the notes are interpreted as "medical opinions," *see* 20 C.F.R. § 404.1527(a)(2), Plaintiff did not show that the opinions undermine the ALJ's assessment of her RFC.  The ALJ considered the relevant medical records, and "there is no rigid requirement

---

[8] As of August 29, 2011, Dr. Douglas Stringer noted that Plaintiff "is still complaining of thoracic and lumbar pain.  She has no radicular pain.  She has been referred to Shand's regarding a herniated thoracic disk.  Apparently she was sent to Tallahassee by her insurance company rather than Gainesville.  She is not working and last worked on 05/23/2011."  Tr. 345 (Exhibit 5F at 1-6 of 71).  A review of systems indicated joint pain and swelling, muscle pain, and muscle weakness were not present.  Tr. 344.  She had a "limping gait."  Tr. 343.  Her upper extremity inspection indicated good pulses, no evidence of edema, full range of motion of her shoulders, elbows and wrists, bilaterally.  Her lower extremity inspection indicated no evidence of edema, full range of motion of her hips, knees and ankles bilaterally.  Tr. 342.  The upper and lower extremities indicated a 4/5 and 3.5/5 in all muscle groups, respectively, and her upper and lower extremity reflexes were 3/5.  *Id.*  Thoracic flexion and extension was 50% and lateral bending and extension was 70% of normal.  Tr. 341.  Plaintiff was prescribed Lortab for 30 days starting August 29, 2011, with no refill, because of failed conservative treatment, etc.  Tr. 340-41.  It is also noted that Plaintiff "indicates appropriately that opioid analgesics have decreased patient's pain and improved patient's function with no significant side effects."  Tr. 340.  "Analgesic relief is good, activity level is good."  *Id.*  Plaintiff was to follow-up in one month.  *Id.*

that the ALJ specifically refer to every piece of evidence in his decision"
provided the ALJ's decision is sufficient to enable the court to conclude that
the ALJ properly consider the claimant's condition as a whole.  <u>Dyer v.
Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005).

The ALJ assessed Plaintiff's RFC during the relevant period from her
alleged onset date of May 26, 2011, to the date of the ALJ decision, March
6, 2015.  Tr. 17-28.  In weighing a medical source's opinion, the ALJ
considers factors such as the evidence to support the opinion, the
consistency of the opinion with the record as a whole, and other factors.
*See* 20 C.F.R § 404.1527(c)(2), (4).  Generally, a treating physician's
opinion is entitled to more weight and the ALJ must "give good reasons" for
rejecting it.  *See* 20 C.F.R § 404.1527(c)(2).  An ALJ may discount the
opinion of a physician, including a treating physician, when not supported
by objective medical signs and diagnostic testing or inconsistent with the
record as a whole.  *Id.;* <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155,
1159-69 (11th Cir. 2004).

Prior to considering the medical evidence, the ALJ summarized
Plaintiff's reported (prior to and during the hearing) physical and mental
impairments and the manner in which they adversely affected her ability to

carry out her daily activities and ability to work.[9]  Tr. 17-18; *see* Tr. 25-26.

The ALJ found Plaintiff statements "not entirely credible."  Tr. 18.

Thereafter, the ALJ stated:

> I incorporated appropriate restrictions into the claimant's [RFC] to account for any limitations associated with her medically determinable impairments.  Review of the evidence reveals she has not been hospitalized recently for treatment.  Yet the whole of the evidence shows that consistent conservative, treatment is relatively effective in controlling her symptoms.

Tr. 18.

The ALJ noted that in September 2011, Plaintiff indicated that despite being released to do light duty work with a maximum lifting of 20 pounds, *see* Tr. 353 (Aug. 1, 2011), she was not able to go back to her job because they did not have any light duty jobs.  Tr. 422 (Sept. 13, 2011).

Christopher S. Rumana, M.D., from Tallahassee Neurological Clinic, noted that as of September 2011, Plaintiff had reached maximum medical improvement with a six percent impairment rating.  Tr. 412, 422. Dr. Rumana noted after a January 17, 2012, office visit: "She ultimately had a function capacity evaluation test performed September 20, 2011[,] which said that she could do medium duty work, 8 hours per day, 40 hours per

---

[9]  Although not dispositive, the claimant's activities may show that her symptoms are not as limiting as alleged.  *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

week.  She reports that she has not been back to work as of yet.  She

presents for recheck.  She reports some continuing back pain."  Tr. 412.

His impression included: "From my standpoint she is welcome to go back to

work, doing medium duty work."  Tr. 20-21, 416, 422.  The ALJ gave

Dr. Rumana's assessment from January 17, 2012, "significant weight

because it is consistent with the whole of the evidence.  For instance, in

January 2015, the consultative examiner [Krzysztof Lewandowski, M.D.]

noted the claimant was able to perform medium work (Exhibit 14F) [Tr.

495-505]."  Tr. 21; *see* Tr. 24.  (Dr. Lewandowski noted, however, that

"heavy lifting will aggravate [Plaintiff's] back problem."  Tr. 500.)

On March 7, 2013, Walter Harris, M.D., a non-examining state

agency physician, reviewed the available evidence and opined that Plaintiff

could lift and/or carry up to 50 pounds occasionally and 25 pounds

frequently; she could stand/walk for about six hours in an 8-hour workday;

sit (with normal breaks) for about six hours in an 8-hour workday; she was

unlimited in her ability to push and pull; she had no postural limitations; and

she should avoid concentrated exposure to fumes, odors, dusts, gases,

and poor ventilation.  Tr. 27, 85-87.  (The ALJ referred to these findings

during the hearing.  Tr. 56.)  The ALJ noted that Dr. Harris's "opinions

generally do not carry the same weight as examining or treating

physicians," but further stated that his "assessment similarly supports a finding of 'not disabled' and is due significant weight in that regard." Tr. 27.  The ALJ gave his opinions "great weight," including the conclusion that Plaintiff "was capable of performing reduced medium work."  *Id.*; *see* 20 C.F.R. § 404.1527(e)(2)(i).

On October 8, 2012, Plaintiff was examined by Owen Oksanen, M.D. Tr. 22, 424-29.  (The ALJ referred to these notes during the hearing. Tr. 56-58.)  Plaintiff reported she did all the cooking, cleaning, and shopping; 10% of the yard work; and she last worked in February 2012. Tr. 22, 427.  Plaintiff reported that she applied for a number of jobs. Tr. 427.  Dr. Oksanen noted on examination that Plaintiff had no difficulty walking or moving around the office and she had full strength and range of motion of the upper and lower extremities.  Tr. 428-29.  Dr. Oksanen noted that Plaintiff had a "[t]otally inappropriate" straight leg raise examination because, although she described lower back pain during the movements, she could easily sit with her legs out front of her and she sat on the table with her legs out in front of her.  She had full range of motion to all major joints and muscle strength was 5/5 throughout.  Tr. 429.  Plaintiff had a normal gait without use of an assistive device, normal heel, toe, and tandem walking and she walked easily of her tip toes.  *Id.*  Dr. Oksanen

opined Plaintiff could perform at least moderate work, as she was doing at

home already, and she had no difficulty with sitting, standing, walking,

lifting, carrying, handling objects, hearing, speaking, or traveling.  Tr. 22,

429.  The ALJ gave Dr. Oksanen's "medical assessments" "significant

weight."[10]  Tr. 22; *see* Tr. 25-26.

On September 22, 2013, Plaintiff presented to the emergency room

at Bay Medical Center with "lower extremity problems."  Tr. 457.  A Doppler

showed no lower extremity deep venous thrombosis, but thrombosed

superficial varicosities within the left calf.  Tr. 22, 468.  On examination,

> [d]espite the edema, the claimant had full range of motion in her
> upper extremities, she had normal muscle strength in her upper and
> lower extremities, she had good shoulder movement, her spine
> appeared normal, and there was no evidence of rhonchi or wheezing
> (Exhibit 9F/4).  She reported that her condition improved after
> receiving routine treatment (Exhibit 9F/7).  The claimant was
> prescribed medication.

---

[10]  Dr. Oksanen was aware of a patient note from TOC that Plaintiff had a 6%
impairment rating, "with continued capability for doing full time, medium duty work."
Tr. 22, 427; *see* Tr. 58-60.  Dr. Oksanen "diagnosed the claimant with thoracic spine,
lumbar spine, and left shoulder pain.  He also noted, 'It was notable that she was ready
to find something wrong with her, in a setting where husband is already on disability'
(Exhibit 7F/5)."  Tr. 22, 428.  The ALJ referred to Dr. Oksanen's notes on two occasions
in her decision and reiterated her understanding of his findings, including that Plaintiff
"difficulty walking or moving around the office; she had normal range of motion in her
neck; her straight leg raise test was negative; she had full range of motion in all joints;
muscle strength was 5 out of 5 throughout; there was no evidence of warmth or
swelling; the exam was normal; her gait was normal; her thoracolumar [sic] spine range
of motion was intact; her cardiovascular, gastrointestinal, and respiratory examinations
were normal; and there was no shoulder issue observed (Exhibit 7F)."  Tr. 25-26; *see*
Tr. 427-29.  Plaintiff argues that she is prejudiced by comments made by
Dr. Oksanen and that his opinion should be discounted, Tr. 424, 429.  ECF No. 19 at 5,
12.  The ALJ did not mention the offending remarks.

Tr. 22, 460.

On April 1, 2014, Plaintiff went to St. Andrew Community Medical Center to establish care with Beverly Bond, ARNP-C.  Tr. 478-82. Plaintiff's examination was normal with full range of motion and strength 5/5 bilateral.  Tr. 480.  In April 2014, an x-ray of the lumbar spine showed diffuse lumbar spine spondylosis L2-L3 and an x-ray of the left knee showed a possible fracture of the corner of the left knee.  Tr. 23, 475.

On May 5, 2014, Plaintiff reported (to Nurse Bond) feeling well overall except for continual left knee pain with some swelling.  Tr. 474.  On examination, she had full range of motion, with slight weakness in the left knee with some swelling.  *Id.*

A January 14, 2015, x-ray of Plaintiff's lumbar spine revealed mild disk space narrowing and marginal osteophyte formation most prominent at L1-2, L2-3, T12-L1, and to a lesser degree L5-S1.  Tr. 24, 493.[11]        On January 28, 2015, at the request of the Social Security Administration, Plaintiff was seen by Dr. Lewandowski for a consultative medical examination.  Tr. 24, 495-505.  The ALJ discusses Dr. Lewandowski's examination results in detail.  Tr. 24-25.

---

[11]  Toward the close of the hearing, the ALJ left the record open for Plaintiff's counsel to obtain a physical capacity assessment from St. Andrews Clinic.  Tr. 61.  No follow-up assessment was provided to the ALJ.  Tr. 13.

Plaintiff complained "[m]y back hurts."  Tr. 495.  Dr. Lewandowski noted Plaintiff's upper and lower extremities were normal with full range of motion.  Tr. 496.  Plaintiff also had negative straight leg raises, normal gait, and normal tip-toe and heel walk.  *Id.*  Dr. Lewandowski noted that despite claims of back and knee pain, her physical examination did not reveal musculoskeletal or neurological impairment.  *Id.*  Plaintiff's spine exam was normal, there was no paraspinal muscle spasms or neurological deficit.  "At this moment," notwithstanding MRI results showing disk disease at multiple levels, she did not have any visible functional impairment, she walked without a limp and did not need an assisted device, and she had a mild tremor in both hands, which did not impair her grip or fine manipulation.  *Id.*  Dr. Lewandowski opined Plaintiff could lift and carry up to 50 pounds occasionally and 20 pounds frequently, she could sit, stand, walk for eight hours without interruption; she did not require a cane to ambulate; she had no limitations with the use of her hands and feet; and there were no postural and environmental limitations.  Tr. 500-05.  Plaintiff was able to perform all daily activities listed.  Tr. 505.  The ALJ gave Dr. Lewandowski's opinion "significant weight" as it was supported by his own examination and generally consistent with the record as a whole.  Tr. 24.

Substantial evidence supports the ALJ's consideration of the opinions of Drs. Oksanen and Lewandowski.  As noted herein, an ALJ considers numerous factors when evaluating a doctor's opinion, *see supra* at 13-16, 23.  *See* 20 C.F.R. § 404.1527(c).  The ALJ considered the opinions of Plaintiff's treating physicians as well as the opinion of non-treating physicians.  The ALJ explained the weight she gave to these opinions with sufficient specificity to withstand judicial scrutiny.  No error has been shown.

2.

Plaintiff argues that the ALJ erred when she determined that Plaintiff's statements about her symptoms were not entirely credible.  ECF No. 19 at 9-11.  Plaintiff argues that "[t]he ALJ failed to follow the guidelines outlined in [Social Security Ruling (SSR)] 16-3p, by ignoring the longitudinal record of treatment and other relevant medical indications of the Plaintiff's back injury and resulting impairments are sufficient to adjudicate a favorable decision at step two of the process outlined in SSR-16-3p."  ECF No.19 at 9.  Substantial evidence supports the ALJ's credibility determinations of Plaintiff that were interspersed among the ALJ's discussion of the medical evidence.  *See* Tr. 17-28.

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988); *see* Moore v. Barnhart, 405 F.3d at 1212 ("credibility determinations are the province of the ALJ").  If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility. *See* Wilson, 284 F.3d at 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.*  On the other hand, "[a] clearly articulated finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

As a threshold issue, SSR 96-7p was subsequently superseded by SSR 16-3p on March 16, 2016, approximately one year *after* the ALJ entered her decision on March 6, 2015.  Tr. 30; *see* SSR 16-p, 20016 SSR LEXIS 4 (Mar. 16, 2016).  Plaintiff does not address whether this ruling is retroactive.  ECF No. 19 at 9-11.

"The Social Security Administration did not explicitly deem this ruling retroactive, and neither the Eleventh Circuit nor any district court within it

has addressed the ruling's retroactivity." <u>Wilson v. Berryhill</u>, Civil Action

No. 1:15-CV-01311-KOB, 2017 U.S. Dist. LEXIS 27697, at *25 (N.D. Ala.

Feb. 28, 2017) (citations omitted); *see* <u>Bagliere v. Colvin</u>, 1:16CV109, 2017

U.S. Dist. LEXIS 8779, at *9-18 (M.D.N.C. Jan. 23, 2017), for a detailed

discussion of the retroactivity of this SSR.  The Commissioner argues that

Plaintiff does not argue that SSR 16-3p should be applied retroactively,

ECF No. 19 at 9-11, therefore the issue is waived.  *See* <u>Outlaw v. Barnhart</u>,

197 F. App'x 825, 828 n.3 (11th Cir. 2006) (unpublished).  ECF No. 20 at

12-13 and n.2.  The Commissioner's argument is persuasive.

As part of her RFC findings, the ALJ referred to SSR 96-7p and made

specific findings regarding Plaintiff's credibility.  Tr. 17, 25-27.  The ALJ

considered Plaintiff's and her husband's statements (and her hearing

testimony) about her symptoms and the limitations they allegedly caused.[12]

Tr. 17-18, 28.  In part, regarding her credibility, the ALJ noted:

> After careful consideration of the evidence, I find that the
> claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these  symptoms are not entirely credible for
> the reasons explained in this decision.

---

[12]  The ALJ considered her husband's statements in accordance with SSR 06-3p,
2006 SSR LEXIS 5 (Aug. 9, 2006).  *See* Tr. 18, 28.  SSR 06-3p, cited by the ALJ,
clarified how SSA considers opinions from sources who are not what the agency terms
"acceptable medical sources."

I incorporated appropriate restrictions into the claimant's residual functional capacity to account for any limitations associated with her medically determinable impairments.   Review of the evidence reveals she has not been hospitalized recently for treatment.  Yet the whole of the evidence shows that consistent conservative, treatment is relatively effective in controlling her symptoms.

\*\*\*\*

In addition to the objective medical evidence, other factors have also been considered regarding the claimant's allegations in assessing her credibility as required by Social Security Ruling 96-7p.  In August 2012 and 2013, the claimant reported that she was not able to complete household chores due to back pain, lower extremity pain, and tremors (Exhibits 4E; 10E).  She provided conflicting information at the hearing.   Specifically, she testified that she could make the bed, sweep the floor, vacuum, wash dishes, cook, shop in stores with her husband, clean the bathroom, do laundry, and mow the lawn, but only a "small portion."[13]

\*\*\*\*

Inconsistent reports and testimony from the claimant, and the fact that the record contains observations of generally stable examination findings without significant change in her condition, detracts from the credibility of the claimant's statements as to her functional limitations and the severity of her alleged symptoms.  While the above inconsistencies may not have been the product of a conscious attempt to mislead on the part of the claimant, they nonetheless undermine the credibility of her statements in reporting activities of daily living and functional abilities.  Accordingly, I find the claimant's statements are not entirely credible pursuant to Social Security Ruling 96-7p.

Tr. 18, 25, 27.

---

[13]   At this point, the ALJ provided a detailed discussion of Plaintiff's reported daily activities, interspersed with examination reports.  Tr. 25-26.  Also, Plaintiff denied medication side effects, but stated that the medication was not effective.  Tr. 26.

As determined by the ALJ, the objective evidence from the record is not consistent with Plaintiff's subjective complaints of disabling pain. Plaintiff did not establish additional functional limitations that preclude her from the RFC found by the ALJ.  Tr. 18-28.  Rather, the ALJ considered Plaintiff's physical impairments and properly accounted for her functional limitations in the RFC.

As noted above, the ALJ noted that Plaintiff was generally treated with routine and conservative treatment, which impacted Plaintiff's credibility and allegations of disabling limitations.  Tr. 25-27; *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).  The ALJ also noted that Plaintiff looked for work after the alleged onset date, which is inconsistent with her allegations of not being able to work.  20 C.F.R. § 416.971.  In addition, Plaintiff's application for receipt of unemployment, *see* Tr. 16, provides additional evidence that her condition was not as disabling as she alleged.  *See* 20 C.F.R. § 404.1529(c)(3)(vii).

The ALJ also considered Plaintiff's other daily activities in evaluating her subjective complaints of disabling symptoms.  Tr. 25-26.  Although not dispositive, the claimant's activities show the claimant symptoms are not as limiting as alleged.  *See* 20 C.F.R § 404.1529(c)(3)(i); *see also supra* at n.9.

Given the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of disabling symptoms were not entirely credible.

3.

Plaintiff argues, in part that "[t]he ALJ did not take into consideration the Plaintiff's ability to do sustained work-related physical and mental activity on a regular and continuing basis" and, as a result, erred in finding that Plaintiff could perform past relevant work at step four of the sequential evaluation process, Tr. 28-29.  ECF No. 19 at 13.  Plaintiff argues that the ALJ reached this conclusion based on an erroneous or incomplete hypothetical question posed to the vocational expert.  *Id.*

After assessing Plaintiff's RFC, the ALJ determined, at step four of the sequential evaluation process, whether Plaintiff could perform her past relevant work.  Tr. 28.  A claimant bears the burden of proving that she could not perform her past relevant work.  *See* <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1359 (11th Cir. 1991).  Here, the ALJ obtained testimony from a vocational expert to assist in the determination of whether Plaintiff could perform her past relevant work.  Tr. 57-61.  The ALJ asked the vocational expert if an individual with Plaintiff's RFC could perform her previous work. The vocational expert testified that the individual could perform Plaintiff's

past relevant work as a salesperson, auto parts; home attendant, cleaner/housekeeper, companion, deli manager, and stock clerk as actually performed.  Tr. 28, 54-55.

Plaintiff argues that the ALJ's hypothetical question was incomplete. *See supra* at 3-6 for the hypothetical questions and responses.  Plaintiff did not prove that she had additional limitations regarding her ability to work as determined by the ALJ and the ALJ's determination is supported by substantial evidence.  The ALJ considered the relevant evidence in assessing Plaintiff's RFC and this evidence was included in her hypothetical question to the vocational expert.  The ALJ was not required to include Plaintiff's subjective complaints or other unsupported limitations in her hypothetical to the vocational expert or accept the vocational expert's testimony in response to a hypothetical question that included, what the ALJ found to be, unsupported limitations.  *See* Crawford, 363 F.3d at 1161. Plaintiff did not prove that her condition imposed limitations beyond the limitations in the ALJ's RFC findings in the hypothetical question posed to the vocational expert.  The vocational expert's testimony supports the ALJ's finding that Plaintiff could perform her past relevant work at step four.[14]

---

[14]   The ALJ also made alternative findings at step five, which are not at issue. Tr. 29-30; *see* ECF No. 20 at 19 n.3.

## VI.  Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly applied the

law.  Accordingly, the decision of the Acting Commissioner to deny

Plaintiff's application for DIB is **AFFIRMED** and Judgment shall be entered

for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on March 29, 2017.

<u>**s/  Charles A. Stampelos**</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**